UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHERMAN M. HUBBARD,

     *Plaintiff*,          CASE NO. 16-11455

*v.*                     DISTRICT JUDGE THOMAS LUDINGTON
                        MAGISTRATE JUDGE PATRICIA T. MORRIS

SELECT PORTFOLIO SERVICING, INC.,
BANK OF AMERICA,
and DEUTSCHE BANK,

     *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT OR DISMISSAL (Docs. 27, 28)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Deutsche Bank and SPS's motion for summary judgment or dismissal (Doc. 27) be **GRANTED**, BANA's motion for summary judgment or dismissal (Doc. 28) be **GRANTED**, and that Plaintiffs' complaint (Doc. 1) be **DISMISSED**.

### II.    REPORT

#### A.    Introduction and Assessing Plaintiff's Claims

Plaintiff Sherman M. Hubbard filed the instant mortgage foreclosure action *pro se* in this Court on April 22, 2016, against Defendants Bank of America, North America ("BANA"), Select Portfolio Servicing, Inc. ("SPS"), and Deutsche Bank National Trust

1

Company ("Deutsche Bank"). (Doc. 1). It was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge for management of all pretrial matters on April 27, 2016. (Doc. 3).

Plaintiff alleges in his complaint that defendants committed certain acts of "breach of contract and fraud" in their capacity as lenders, servicers, and mortgage holders, and with regard to a mortgage upon Hubbard's home, entered into in January 2004. (Doc. 1 at 2). Plaintiff asserts that sometime around 2008 he underwent a bankruptcy proceeding, wherein he paid $41,887 to BANA, which remains "unaccounted for as to date." (Doc. 1 at 3).

Plaintiff alleges that he was informed by letter on March 11, 2013, that he was "approv[ed] for a loan modification [a]s ordered by the US Justice Department and State Attorney General's Global Settlement," that he was to make "3 trial [p]ayments of $1,375.74 per month for 3 months," that he made all such payments, and that defendant SPS told Plaintiff that his monthly payments would be at an interest rate of less than four percent, but that the final loan modification offer was at an interest rate just below nine percent. (*Id.* at 3). Plaintiff alleges that defendants breached their duties under "the federally ordered settlement modification by not offering [a loan] at market interest rate at the time of the loan modification, nor have they accounted [f]or the $4,127.22 paid on the loan modification." (*Id.*).

2

Plaintiff further alleges that defendants "fraudulently deceived Plaintiff" and his attorney[1] by requiring that he "submit loan modification documentation in excess of 15 times [e]ach and every time claiming some form of paperwork is missing, incomplete or [e]xpired." (Doc. 1 at 3).

Plaintiff also alleges that defendants have "repeatedly changed or assigned a new loan servicer to [f]urther delay the loan modification process." (Doc. 1 at 3).

Plaintiff further asserts that "[o]n 4 separate occasions defendant [sic] has offered loan modifications without [a]ny paper work to plaintiff with deceptive open ended terms." (Doc. 1 at 3).

Finally, Plaintiff asserts that defendants initiated foreclosure proceedings upon his home in January 2015 "for nonpayment of taxes Defendant is charging plaintiff for escrow monies for taxes," and that "defendants [sic] failure [t]o pay is a violation of defendants [sic] fiduciary responsibility and fraud." (Doc. 1 at 3-4). As a result, Plaintiff asserts that he is unable to "repair credit" or "make necessary repairs to [the] property" due to defendants' failure to complete the mortgage modification process. (*Id*. at 4).

On December 12, 2016, Deutsche Bank and SPS filed a motion for summary judgment or dismissal (Doc. 27), and BANA filed their own, separate, motion for summary judgment or dismissal (Doc. 28). Plaintiff filed a response on January 3, 2017. (Doc. 30). On January 17, 2017, BANA filed a reply (Doc. 38), as did Deutsche Bank and SPS (Doc. 39). On January 23, 2017, Plaintiff filed an unauthorized sur-reply. (Doc.

---

[1] As noted above, Plaintiff is proceeding *pro se* in this matter, and has represented himself since filing this case. The Court is uncertain which attorney Plaintiff might be referencing.

40). Therefore, the motion is ready for report and recommendation without oral argument. *See* E.D. Mich. LR 7.1(f)(1).

I further note that on January 3, 2017, Plaintiff filed an amended complaint along with numerous, separately filed exhibits, without first seeking permission to amend. (Docs. 31-36). On January 12, 2017, the undersigned struck those documents from the record as being improperly filed. (Doc. 37). Plaintiff's original, unamended complaint therefore remains the only complaint at issue in this case. (Doc. 1).

In his response to Defendants' motions for summary judgment or dismissal, Plaintiff asserts that defendants have not complied with the terms of the Home Affordable Modification Program ("HAMP"), and in 2013 offered Plaintiff a mortgage modification program not complying with HAMP. (Doc. 30 at 2). Plaintiff makes no reference to HAMP in his complaint, and has not successfully amended his complaint. Plaintiff therefore cannot state a claim by asserting that Defendants violated HAMP. Moreover, any claims Plaintiff might have raised regarding HAMP fail on the merits, as discussed below.

Plaintiff also references the existence of certain payments to an "escrow account to pay the taxes on Plaintiff's home," which he asserts took place between 2011 and 2016. (Doc. 30 at 3). Plaintiff asserts that Defendants failed to use these funds to pay taxes on the Property, and that the Property was foreclosed upon in January of 2014 for nonpayment of taxes. (*Id*.).

4

Plaintiff likewise asserts for the first time in his response that BANA, SPS, and "others" worked together in what he characterizes as a "RICO enterprise," *i.e.* referencing the Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, to "push homeowners who were applying for HAMP modification towards their more expensive in-house modifications using tactics of outright fraud," and "conspired to prolong, delay and employ obstruction tactics in various forms with the common result that homeowners . . . who met the requirements for participation in HAMP, did not get a fair opportunity to secure a permanent loan modification through the HAMP process." (Doc. 30 at 4-5). Once again, Plaintiff is not entitled to amend his complaint by simply placing new allegations in his response to Defendants' motion for summary judgment. While complaints drafted by *pro se* filers should be construed liberally, permitting Plaintiff to throw new claims into his responses without regard for amending his complaint would throw the rules of civil procedure into disarray, and would be fundamentally unfair to Defendants, who drafted their motions for summary judgment on the premise that Plaintiff's complaint is the sole source of his claims.

Plaintiff also attempts to raise a promissory estoppel claim in his response, but he raised no such claim in this complaint. (Doc. 30 at 6-7). This claim is likewise not properly before the Court.

Plaintiff also filed an unauthorized sur-reply on January 23, 2017. (Doc. 40). Sur-replies are not contemplated by the Federal Rules of Civil Procedure or this district's local rules, and are impermissible. Defendants' have the burden of demonstrating that

entry of summary judgment is appropriate, thus they are accorded the opportunity to reply to Plaintiff's response. Plaintiff's unfamiliarity with the finer points of federal procedure do not entitle him to a second bite at the apple, *i.e.* two attempts to respond to Defendants' motions for summary judgment. Having already exhausted his opportunity to respond, Plaintiff's sur-reply was improperly filed and will not be considered..

As discussed above, Plaintiff's only viable claims are those found in his unamended complaint.

### B. Factual Background

The property in question is commonly known as 4297 North Poplar Road, Lincoln, Michigan 48742 (the "Property"). (Doc. 27 at 1). In 2004 Plaintiff received a loan pursuant to a mortgage (the "Mortgage") from NationWide Lending Corporation in the amount of $164,000 to purchase the Property. (*Id*.). In 2005 the Mortgage was assigned to New Century Mortgage Corporation. (*Id*.). In 2015 SPS, as servicer of the Mortgage, executed and filed in Alcona County Records an affidavit "Regarding Lost or Misplaced Assignment," which stated that the mortgage was assigned to Deutsche Bank, as trustee. (*Id*. at 1-2). SPS admits that it is and has been the servicer on the Mortgage since September 2012. (*Id*. at 2).

In 2006 Plaintiff filed for Chapter 13 bankruptcy, which was dismissed without discharge in 2008. (Doc. 27 at 2). Deutsche Bank and SPS assert that Plaintiff defaulted on the Mortgage, whereupon he requested a modification, which he was denied. (*Id*.). Deutsche Bank and SPS assert that SPS informed Plaintiff on September 24, 2013, that

6

he was denied a modification because he "did not return the permanent modification documents by the requested deadline, and, therefore, the Loan was not eligible to be modified pursuant to this modification program." (*Id*. at 3).

BANA largely confirms Deutsche Bank and SPS's recitation of the facts, and formally adopts the arguments made in the other defendants' motion (Doc. 28 at 4 fn. 1). BANA also incorrectly asserts that "Plaintiff executed a promissory note in the amount of $1,120,1200.00" (Doc. 28 at 1), whereas the note attached as Exhibit 1 to BANA's motion demonstrates that the note was executed in the amount of $164,000.00 (*Id*. at Ex. 1). This appears to be a mere scrivener's error, but I note this discrepancy to avoid confusion. BANA also confirms that during the pendency of Plaintiff's Chapter 13 bankruptcy proceeding, Plaintiff made eight payments totaling $41,887 to BANA, but challenges that those payments were "properly applied" to the Mortgage. (*Id*. at 3).

## C.   Analysis

Plaintiff's allegations span nearly a decade, but they boil down to the following claims: 1) that BANA failed to apply the $41,887 paid by Plaintiff during his 2008 bankruptcy proceedings to the Mortgage; 2) SPS failed to comply with the terms of a federally mandated settlement agreement, and thus failed to provide Plaintiff with a mortgage modification to which he was entitled; 3) Defendants engaged in fraudulent and deceptive practices by repeatedly reassigning the Mortgage and pretending to have not received Plaintiff's loan modification documents; 4) Defendants failed to pay the taxes

upon the Property, and thereby caused the Property to be foreclosed upon. (Doc. 1 at 3-4).

### i.     Motion to Dismiss Standard

Both sets of defendants entitle their motions as "motions for summary judgment," and the standards of law recited in their motions reflect the standards set forth under Federal Rule of Civil Procedure 56. (Doc. 27 at 4-5; Doc. 28 at 1, 4-5). BANA provides only the standard under Rule 56 in its motion, but primarily seeks relief based on Plaintiff's failure to state a claim, relief more appropriately sought under Rule 12. (Doc. 28 at 4-15). Deutsche Bank and SPS also provide the standard set forth in Federal Rule of Civil Procedure 12(c), and argue that both Rules 12(c) and 56 should apply.  (Doc. 27 at 4-5). Joint motions for dismissal and summary judgment "are inherently confusing because they blur the standard of review for dismissal with the standard of review for summary judgment." *Carillo v. Donahoe*, No. 1:14-CV-1008, 2016 WL 5210741, at *2 (W.D. Mich. Aug. 30, 2016), report and recommendation adopted, No. 1:14-CV-1008, 2016 WL 5131066 (W.D. Mich. Sept. 21, 2016).

Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movant clearly establishes that no material issue of fact requires resolution and that she is entitled to judgment as a matter of law. *See Beal v. Missouri Pacific R.R.*, 312 U.S. 45 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, p. 518. The Court of Appeals for the Sixth Circuit has stated that a

8

district court must consider a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion to dismiss. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, L.L.C.*, 477 F.3d 383, 389 (6th Cir. 2007). Motions under Rule 12(c) tests only whether the complaint itself states a sufficient claim for relief. *See Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). "A Rule 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted." *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 614 (W.D. Mich. 2009). Documents "not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings . . . when the 'document is referred to in the complaint and is central to the plaintiff's claim.'" *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James W.M. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

### ii. Summary Judgment Standard

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. American Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so,

11

the nonmoving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where a party moves for dismissal under 12(c) but relies upon documents outside of the pleadings (and not incorporated by reference per *Greenberg*), the motion should be converted into one for summary judgment under Rule 56. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). I will therefore consider whether the defendants style each of their defenses as meriting dismissal of Plaintiff's complaint on the ground that his claims are deficiently pled, or because review of facts outside of the pleadings demonstrates that Plaintiff's claims are factually unsupportable, and resolve those defenses using the appropriate standard as described above.

12

### iii.    Plaintiff's Response

As noted above, Plaintiff unsuccessfully attempts to use his response to Defendants' motions for summary judgment or dismissal (Doc. 30) to smuggle into this case several claims not included in his complaint. Plaintiff may use his response to address arguments raised by Defendants, or to defend the claims raised in his complaint, but he may not use that document as an amended complaint.

In his response, Plaintiff alleges that he made "trial mortgage modification payments to Defendant's [sic], (all [p]ayments were made on time) Defendants [sic] written and verbal communications assured and led Plaintiff to believe he would receive a mortgage modification under HAMP guidelines," that "Defendants allowed the documents to age for 6 months," that "on 3-11-2013 Plaintiff was offered a trial payment plan," and that he "completed that plan believing in the fact he would be offered a HAMP mortgage modification." (Doc. 30 at 2). He further asserts that in "Mid June [he] was offered an in 'house mortgage modification' with terms that were far less favorable than Plaintiff was entitled to under HAMP guidelines (and was promised a HAMP Mortgage Modification." (*Id.*). Plaintiff reasons that he therefore raises a claim for breach of contract. (*Id.* at 2-3).

Plaintiff further alleges that "[f]rom 2011 to 4-29-2016 Defendants have claimed and charged for a [sic] escrow account to pay the taxes on the Plaintiff's home. In January of 2014 Plaintiffs [sic] home was foreclosed upon for non payment of taxes despite repeated calls and letters to Defendant [sic] which were ignored," that he

13

"redeemed his home on 3-27-2014, 4 days before redemption rights expired, Defendants had no intention of paying the taxes." (Doc. 30 at 3).

Plaintiff also asserts that BANA agreed to participate in the HAMP program, and was obligated to comply with the terms of that program to "extend loan modifications to eligible homeowners," but that "[BANA], SPS and OTHERS found it was more profitable if homeowners were forced into in-house mortgage modifications," and forced homeowners into such modifications "using tactics of outright fraud." (Doc. 30 at 4). He alleges that these activities constitute racketeering in violation of RICO laws. This claim was not included in Plaintiff's complaint, and he cannot use his response as a means of smuggling in this claim.

Plaintiff also references in his response various causes of action, including fraud in the inducement, constructive fraud, negligent misrepresentation, and promissory estoppel. (Doc. 30 at 6). He further asserts that he is entitled to equitable tolling and application of the discovery rule on account of "Defendants [sic] illegal, deceptive, and fraudulent practices." (*Id*. at 7).

### iv.    Deutsche Bank's Motion for Summary Judgment or Dismissal

Deutsche Bank argues that Plaintiff's complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted. (Doc. 27 at 5-6). As noted above, to survive a motion under Rule 12(b)(6) or 12(c), a petitioner must put forth sufficient claims, backed up by sufficient facts, to state a viable claim for relief. *See*

*Iqbal*, 556 U.S. at 678. These claims must be plausible and non-conclusory; allegations of law are not entitled to the assumption of truth. *Id*.

Breaking down Plaintiff's complaint on a defendant-by-defendant basis demonstrates that he has raised very few factual allegations against any defendant. Plaintiff plays fast and loose with the identities of the defendants, cycling between use of the term "Defendant" and "Defendants," without any attempt to define which party he is referring to when using those terms. (Doc. 1 at 2-3). Factual allegations which fail to specify which defendant committed which act are conclusory and are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678; *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (affirming a district court's dismissal of defendants where the complaint "makes only categorical references to 'Defendants'"); *Campbell v. Worthy*, No. 12-CV-11496, 2013 WL 2446287, at *2 (E.D. Mich. June 5, 2013) ("[T]he complaint consists almost entirely of generalized allegations against "defendants" collectively, as opposed to specific allegations as to 'what each defendant did to violate the asserted constitutional right.' The Court shall dismiss the complaint . . . .").

Moreover, Plaintiff's failure to distinguish between the defendants fails to put any particular defendant on notice of his claims against them, and thus violates the requirement of Federal Rule of Civil Procedure 8(a)(1) that pleadings contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." *See also Pearson v. Oakland Cty. Circuit Court*, No. 1:15-CV 22, 2015 WL 728475, at *9 (W.D. Mich. Feb.

19, 2015) ("Plaintiff fails even to mention which Defendant was responsible for his losses. His allegations therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 . . . ."); *Allied Steel & Tractor Prods., Inc. v. First Nat'l Bank of N.Y.*, 54 F.R.D. 256, 260 (N.D. Ohio 1971) (holding that "merely identifying a party as a defendant without alleging more" violates Federal Rule of Civil Procedure 8).

Plaintiff's assertion that "Defendants failed to perform on the federally ordered settlement by not offering [a]n [sic] at market interest at the time of the loan modification nor have they accounted [f]or the $4,127.22 paid on the loan modification" (Doc. 1 at 3) is therefore too vague to place any defendant on notice of Plaintiff's claims against them, and is too conclusory to survive scrutiny under *Iqbal*. His claim that "Defendant has repeatedly changed or assigned a new loan servicer to [f]urther delay the loan modification process" (*Id.*), and that "defendant has offered loan modifications without [a]ny paper work to plaintiff with deceptive open ended terms" (*Id.*) likewise fail under *Iqbal* and Rule 8.

Plaintiff's claims that "Defendants have knowingly and willfully have [sic] fraudulently deceived Plaintiff and Plaintiffs [sic] Attorney by having them submit loan modification documentation in excess of 15 times [e]ach and every time claiming some form of paperwork is missing, incomplete or [e]xpired" (Doc. 1 at 3) and that "Defendant is charging plaintiff for escrow monies for taxes, defendants failure [t]o pay is a violation of defendants [sic] fiduciary responsibility and fraud," are likewise deficient under *Iqbal* and Rule 8. These allegations are also subject to the heightened pleading standards

attendant to fraud claims under Federal Rule of Civil Procedure 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Plaintiff fails to refer to a particular defendant, time, or place, in these fraud claims, and these allegations fail for this additional reason.

Returning to Deutsche Bank, Plaintiff alleges only that a "loan was sold to Deutsche Bank as trustee for Morgan Stanley." (Doc. 1 at 3). Even assuming the truth of this allegation, Plaintiff has not set forth any viable claim for relief against Deutsche Bank. That Deutsche Bank was assigned a loan as trustee is not, in and of itself, a tort, violation of contract, or other actionable claim for relief. Deutsche Bank is therefore entitled to dismissal under Rule 12(c). Deutsche Bank's motion for dismissal (Doc. 27) should be granted.

### v.     SPS's Motion for Summary Judgment or Dismissal

Defendant SPS moves for summary judgment or dismissal alongside Deutsche Bank, and raises the same defenses. (Doc. 27). However, because Plaintiff makes separate and different allegations against these two parties, I will evaluate them separately.

Plaintiff asserts that SPS "became the loan servicer of the debt on 09-12-2012." (Doc. 1 at 3). He further asserts that he was "told by [SPS] the monthly payments would be [s]ubstantially less than $1,375.74 and the interest rate on the loan would be at market rate of 2.75-3.75%. The final loan modification offer was $136,000 loan amount Interest Rate of 8.78% and a monthly payment amount of $1375.74." (*Id.*). Construing Plaintiff's

17

complaint liberally, these assertions are minimally sufficient to allege the claim that SPS violated its promise to provide a mortgage modification at a particular rate.

However, this claim is not one upon which relief can be granted, and is therefore nevertheless subject to dismissal under Federal Rule of Civil Procedure 12(c). Plaintiff effectively asserts that SPS promised him a loan modification, but altered the terms of the modification in a manner unfavorable to Plaintiff. (Doc. 1 at 3). Plaintiff must thus ground his claim in some right to a modification, or SPS's alleged promise to modify the Mortgage.

In his complaint, Plaintiff suggests that SPS might have been obliged to offer him a modification pursuant to the "US Justice Department and State Attorney General's Global Settlement." (Doc. 1 at 3). Plaintiff makes no citation to this alleged "Global Settlement," but it appears that he is referring to a 2012 National Mortgage Settlement[2] between the federal government and several banks. The trouble with Plaintiff's argument is that numerous judges in this district have concluded that the 2012 National Mortgage settlement is a consent judgment which operates only between the parties to that agreement, that the judgment can be enforced only in the United States District Court for the District of Columbia, and that it offers no cause of action for individual homeowners. *See Purnell v. CitiMortgage, Inc*., No. 14-11107, 2015 WL 4199243, at *14 (E.D. Mich. July 13, 2015) ("Plaintiff's claim that she is an intended third-party beneficiary to the National Mortgage Settlement as set forth in the Consent Judgment is without merit.");

*Parker v. Chase Home Finance, LLC*, No. 11–11540, 2013 WL 5874614, at * 2 (E.D. Mich. Oct. 31, 2013) ("[T]his court is without jurisdiction to enforce the National Mortgage Settlement, which is enforced through a consent judgment entered in the United States District Court for the District of Columbia."); *Habib v. Bank of Am.*, NA, No. 13–10853, ECF No. 16, at *6–7 (E.D. Mich. July 15, 2013) (concluding that the plaintiff was not a party to the Consent Judgment and therefore could not enforce its terms and noting that the express language of the Consent Judgment provides that it must be enforced in the United States District Court for the District of Columbia). Plaintiff therefore cannot obtain relief under the 2012 National Mortgage Settlement.

Plaintiff must therefore ground his right to a modification under federal law, state law, or the terms of his Mortgage contract. Plaintiff makes no attempt to identify any federal or state statute or provision which could support such a right, and the Court is aware of no such statute. *See, e.g.*, *Beasley v. Wells Fargo Bank, N.A.*, No. 3:16-CV-1373, 2017 WL 413856, at *5 (M.D. Tenn. Jan. 31, 2017) (holding that the Real Estate Settlement Procedures Act does not require mortgage servicers to offer mortgage assistance to borrowers); *Diaz v. Bank of Am., N.A.*, No. 1:14-CV-411, 2014 WL 2253672, at *2 (W.D. Mich. May 29, 2014) (holding that MCL § 600.3205c "does not require a lender to modify a specific loan"); *Loeffler v. BAC Home Loans Servicing, L.P.*, No. 11-CV-13711, 2012 WL 666750, at *4 (E.D. Mich. Feb. 29, 2012) (noting that HAMP does not require mortgage servicers to modify loans and that HAMP creates no

---

[2] The settlement is available online at http://www.nationalmortgagesettlement.com/. (last visited March 6, 2017).

private right of action). Plaintiff likewise does not attempt to identify any portion of his mortgage contract which would require any of the defendants to offer him a mortgage modification.

While Plaintiff has not grounded his right to a mortgage modification in any statute or contractual right, he appears to argue that SPS acted fraudulently by promising him a modification and then later withdrawing or modifying that offer. (Doc. 1 at 3). This argument likewise fails. Under Michigan law, "[a]n action shall not be brought against a financial institution to enforce . . . promises or commitments of [a] financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution" including a "promise or commitment to lend money, grant or extend credit, or make any other financial accommodation" and a "promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation." Mich. Comp. Laws § 566.132(2)(a)-(b). Claims of promissory estoppel brought against financial institutions under the circumstances described above fail unless the petitioner presents a written copy of the alleged promise or commitment, signed by the financial institution.

Financial institutions are defined as "a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act . . . or an affiliate or subsidiary thereof." MCL § 566.132(3). As can be found on the Michigan Department of Insurance and Financial Services page,

http://www.michigan.gov/difs/ (last accessed March 7, 2017), SPS is a registered mortgage servicer, license number FR-0012450. BANA and Deutsche Bank are likewise considered "financial institutions" under Michigan's statute of frauds. *See Sterling Mortg. & Inv. Co. v. CitiMortgage, Inc.*, No. 14-10709, 2015 WL 1300018, at *5 (E.D. Mich. Mar. 23, 2015) (as applied to BANA); *Liddell v. Deutsche Bank Nat. Trust Co.*, No. 13-13660, 2013 WL 5785888, at *4 (E.D. Mich. Oct. 28, 2013) (as applied to Deutsche Bank). All three defendants are therefore covered by MCL § 556.132(2)(a)-(b). Because Plaintiff has failed to provide evidence of written promises or commitments, his promissory estoppel claim fails. See *Fredericks v. Mortg. Elec. Registration Sys., Inc.*, No. 14-14270, 2015 WL 3473972, at *5-6 (E.D. Mich. June 2, 2015) (dismissing a promissory estoppel claim brought under similar circumstances); *Martin v. Bank of New York Mellon Corp.*, No. 15–CV–10330, 2015 WL 7352006, at *4 (E.D. Mich. Nov. 20, 2015) (same).

As noted above, Plaintiff's claims of fraud fall well below the pleading standard required for claims of fraud under Federal Rule of Civil Procedure 9(b), and fail against SPS for this additional reason.

Insofar as Plaintiff can be understood to argue that SPS owed him some duty of care outside of that provided for in his mortgage contract, judges in this district have repeatedly rejected such claims because "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006); *see*

also *Austerberry*, No. 15-CV-13297, 2015 WL 8031857, at *8; *Fredericks v. Allquest Home Mortgage Corp.*, No. 15-10429, 2015 WL 1966856, at *4 (E.D. Mich. Apr. 30, 2015); *Cheesewright v. Bank of Am., N.A.*, No. 2:11-CV-15631, 2013 WL 639135, at *5 (E.D. Mich. Feb. 21, 2013). In the alternate, if Plaintiff intended to argue that SPS violated an explicit obligation of good faith and fair dealing imposed in this specific mortgage contract, he has failed to identify any provision of that contract which could support such a claim.

Plaintiff therefore has no viable claims against SPS, and his action should be dismissed against SPS pursuant to Rule 12(c).

### vi.    BANA's Motion for Summary Judgment or Dismissal

As noted above, BANA entitles their motion one for summary judgment, but seeks relief primarily based on Plaintiff's failure to state a claim. (Doc. 28 at 4-15). I will analyze BANA's defenses under the appropriate standard based on whether their arguments require recourse to documents not included in or referenced in Plaintiff's complaint.

Plaintiff makes the following allegations specifically referencing BANA in his complaint: that "$41,887 was paid to [BANA]" as part of his 2008 bankruptcy proceeding but that those funds remain "unaccounted for as to date," and that BANA "through Countrywide had Plaintiffs [sic] locks [c]hanged on 3-7-2007 locking Plaintiff out of residence." (Doc. 1 at 3). Assuming that these statements are true, and assuming that they state a viable claim for relief, these claims are nevertheless barred by various

statutes of limitation. Under Michigan law, contract claims must be brought within six years of the alleged violation of contract, fraud claims within six years, and tort claims within three years. *See* MCL § 600.5807(8); MCL § 600.5813; MCL § 600.5805(10). Plaintiff alleges that BANA's conduct occurred in 2007 and 2008, yet he did not file this action until February 2016, roughly eight years later. (Doc. 1). Plaintiff therefore states no viable claim against BANA, and BANA's motion for dismissal should be granted pursuant to Federal Rule of Civil Procedure 12(c).

Plaintiff attempts to avoid this conclusion by asserting in his response that the statutes of limitation have been tolled under the doctrines of promissory estoppel, equitable tolling, and the discovery rule. Even if he was correct, his claims against BANA would fail for the same reasons that they fail against Deutsche Bank and SPS. In particular, he has not identified any right to a mortgage modification, cannot raise a claim based on the 2012 National Mortgage Settlement, has not produced any writing from BANA which could overcome Michigan's statute of frauds, and has not properly alleged any act of fraud in compliance with Federal Rule of Civil Procedure 9(b).

Plaintiff has therefore failed to state a claim against any of the three defendants, and each is entitled to dismissal.

### E.    Conclusion

For the reasons stated above, the Court recommends that Deutsche Bank and SPS's motion for summary judgment or dismissal (Doc. 27) be **GRANTED**, BANA's

motion for summary judgment or dismissal (Doc. 28) be **GRANTED**, and that Plaintiffs'

complaint (Doc. 1) be **DISMISSED**.

## III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days

after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party

may respond to another party's objections within 14 days after being served with a copy."

Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155;

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making

some objections, but failing to raise others, will not preserve all the objections a party

may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any

objection must recite precisely the provision of this Report and Recommendation to

which it pertains. Not later than 14 days after service of an objection, the opposing party

may file a concise response proportionate to the objections in length and complexity. Fed.

R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 16, 2017                              S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Sherman M. Hubbard at 4297 Poplar, Lincoln, MI 48742.

Date: March 16, 2017                              By s/Kristen Castaneda
                                                  Case Manager